ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| GUSTAVO ADOLFO CRESPO POL<br><br>Apelada<br><br>v.<br><br>POZUELO 50 LLC<br><br>Apelante | TA2025AP00197 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Caso Núm.: SJ2024CV03228<br><br>Sobre: Cobro de Dinero (Ordinario) |

Panel integrado por su presidenta la Juez Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 25 de septiembre de 2025.

El 1ro de agosto de 2025, Pozuelo 50, LLC, (Pozuelo o apelante) nos solicitó que revisemos la sentencia que emitió el Tribunal de Primera Instancia, Sala de Guayama, el 12 de junio de 2025. Mediante referida sentencia el foro primario declaró *Con Lugar* la demanda de cobro de dinero que incoó Gustavo Adolfo Crespo Pol contra Pozuelo 50, LLC.

Por las razones que exponemos a continuación *modificamos* la Sentencia apelada.

### I.

El 6 de abril de 2024, Gustavo Adolfo Crespo Pol interpuso una demanda de cobro de dinero contra Pozuelo 50, LLC. Alegó que la parte demandada otorgó un pagaré el 19 de julio de 2023 a la orden de la parte demandante para el pago de $249,394.00 de principal. Indicó que $25,000.00 de principal venció el 26 de octubre de 2023, y el principal restante, o sea, $224,394.00, venció el 19 de enero de 2024, más el pago del 10% de interés

anual acordado en caso de mora hasta el total pago de la deuda, más el pago del crédito de $24,939.40 en caso de reclamación judicial, para costas, gastos y honorarios de abogado. Incluyó el pagaré como exhibit 1. En la demanda, señaló que el pagaré representa la obligación del pago de los bienes vendidos a la parte demandada, el 19 de julio de 2023 mediante las escrituras 51 y 52 ambas de 19 de julio de 2023 ante el notario Dennis Martínez Colón. **El demandante describió los bienes vendidos como lote 50 E y lote 50 F de la comunidad Pozuelo, barrio Jobos en Guayama**. La parte demandante incluyó como apéndice la escritura 51, relacionada a la compra del lote 50; la escritura 52, relacionada a la compra de los lotes 50 E y 50 F y copia del pagaré por $249,394.00.

El 13 de agosto de 2024, Pozuelo contestó la demanda y presentó sus defensas afirmativas.[1] Admitió haber otorgado las Escrituras Número 51 y 52 el 19 de julio de 2023. **Señaló que la finca descrita en la escritura Número 51 del 19 de julio de 2023 no garantizaba ninguna deuda a favor del demandante**. Alegó que en el pagaré se hizo referencia una escritura número 53 que no se presentó como prueba en el caso. Que faltaba parte indispensable, pues el demandante no era el único titular de las fincas número 17,533 y 17,534 de Guayama, por tanto, tampoco tenía autoridad para establecer un gravamen sobre estas. Adujo que las Escrituras Número 15, sobre Adjudicación Particional, Número 52 sobre Compraventa y Número 53 sobre Hipoteca no han sido inscritas en el Registro de la Propiedad.

---

[1] Revisado del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI) de conformidad con la facultad que nos concede la Regla 77(D)(2) de nuestro Reglamento, *In re*: Reglamento del Tribunal de Apelaciones, 2025 TSPR 42, 215 DPR \_\_\_\_, entrada 12.

El 23 de septiembre de 2024, las partes rindieron el *Informe para Manejo de Caso*.[2]

El 15 de enero de 2025[3] se realizó una vista sobre el estatus del caso.  Consecuente a la audiencia, ese mismo día[4], la parte demandante presentó una *Moción en Cumplimiento de Orden Según la Vista de 15 de enero de 2025,* para incluir como apéndice la escritura 53 sore Hipoteca en Garantía de Pagaré, firmada el 19 de julio de 2023.  El demandante, le solicitó al foro primario que incluyera en la minuta, ciertas expresiones que surgieron de la aludida audiencia.

El 21 de enero de 2025[5], Crespo Pol presentó una *Solicitud de Sentencia Sumaria para que se declare Ha Lugar la Demanda*. En esta incluyó los siguientes documentos:

Exhibit A. Declaración jurada;
Exhibit B, Descubrimiento cursado del demandante y
Exhibit C, Contestaciones juradas y admisiones de la demandada al descubrimiento del demandante.

Aludió también a los siguientes documentos unidos al expediente:

Exhibit 1, Pagaré $249,394.00 (entrada 1)
Exhibit 2, Escritura 51 CV de 2023 (entrada 1)
Exhibit 3, Escritura 52 CV de 2023 (entrada 1)

Incluyó dieciséis (16) hechos como no controvertidos, a saber:

1. Se trata de una acción del acreedor demandante en contra del deudor demandado para el cobro de una deuda evidenciada en un Pagaré ante notario, Exhibit 1, cuya deuda esta vencida, liquida y exigible. Rio Mar Community Association Inc v Mayol Bianchi, 208 DPR __ 2021TSPR138; Ramos etc v Colón etc 153 DPR 534, 546 (2001), Guadalupe v Rodríguez 70 DPR 958,966 (1950).

---

[2] SUMAC TPI, entrada 14.
[3] SUMAC TPI, entrada 33.
[4] SUMAC TPI, entrada 29.
[5] SUMAC TPI, entrada 30.

2. La parte demandada otorgó un Pagaré (el Pagaré) el 19 de julio de 2023 ante el notario Dennis Martínez Colon, bajo affidávit 12,411, de igual fecha y lugar, a la orden de la parte demandante para el pago de $249,394.00 de principal, de los cuales $25,000.00 de principal venció el 26 de octubre de 2023, y el principal restante, o sea, $224,394.00, venció el 19 de enero de 2024, más el pago del 10% de interés anual acordado en caso de mora hasta el total pago de la deuda, más el pago del crédito de $24,939.40 en caso de reclamación judicial, para costas, gastos y honorarios de abogado, suma exigible con la mera radicación de la demanda. Exhibit 1, Pagaré $249,394.00 (entrada 1).

3. El Pagaré representa la obligación del pago del balance del precio aplazado de la compraventa de bienes de la parte demandante vendidos a la parte demandada, el 19 de julio de 2023 mediante las escrituras 51 y 52 ambas de 19 de julio de 2023 ante el notario Dennis Martínez Colón. Exhibit 2, Escritura 51 CV de 2023 (entrada 1) Exhibit 3, Escritura 52 CV de 2023 (entrada 1).

4. La demanda se origina de los acuerdos y obligaciones de la venta en conjunto de las propiedades, a saber, lote 50, lote 50 E y lote 50 F. El demandado se constituyó en deudor de las obligaciones según los acuerdos y del pago y la garantía del balance deudor del precio aplazado. Ex 1, Ex 2, Ex 3 (entrada 1).

5. El acreedor demandante reclama al deudor demandado el pago de las obligaciones por el incumplimiento y por las violaciones de los acuerdos y del pago del Pagaré. Ex 1, Ex 2, Ex 3 (entrada 1).

6. El demandado falló e incumplió.

7. Los bienes, objeto de la venta del demandante al demandado según los acuerdos y obligaciones contraídas por el demandado, se describen en dichos documentos unidos a los autos. Ex 1, Ex 2, Ex 3. (entrada 1).

8. El expositivo Cuarto (Exhibit 3, párrafo 4, Esc 52 de 2023, p 3 (entrada 1) sobre el acuerdo entre las partes lee como sigue:

---CUARTO: Las partes comparecientes han tenido extensas negociaciones para la venta en conjunto de las propiedades adjudicadas a GUSTAVO ADOLFO CRESPO POL como parte de los acuerdos de partición de la herencia de Don Gustavo Adolfo Crespo Armenteros. Las partes reiteran en el presente acto que el acuerdo entre ellas incluye tanto la transacción contenida en el presente documento, así como la venta de la Parcela Cincuenta (50) contenida en una escritura separada, siendo esto una condición esencial

y parte de la causa contractual de la transacción, así como para garantizar el cumplimiento de los términos acordados incluyendo el pago del balance del precio que queda aplazado.

9. La parte demandante es la actual dueña, legal tenedora, y acreedora del Pagaré. Ex 1.

10. La parte demandada falló, ha violado y continúa violando el acuerdo y sus obligaciones.

11. Según acordado, la parte demandada adeuda a la parte demandante las cantidades reclamadas cuyas cantidades se liquidan como sigue:

a) Principal adeudado $249,394.00

[……..]

Balance adeudado a 31 enero 2024 $275,802.46.

[……..]

12. La deuda reclamada está vencida, es líquida y exigible.

13. La deuda reclamada no ha sido pagada.

14. La parte demandante ha notificado a la parte demandada sobre su falta de pago vencido pero la parte demandada ha hecho caso omiso, ha fallado, ha sido temeraria y de mala fe ha incurrido en responsabilidad procedente del dolo. La parte demandada se niega de mala fe al pago.

15. La parte demandante expresamente ha consignado por escrito que limita su reclamación de intereses en la demanda al tipo de interés máximo que no exceda el máximo legal, y que le sería dable recobrar bajo la legislación vigente.

16. La parte demandante tiene derecho a cobrar y ejecutar el Pagaré y el cobro de la totalidad de las cantidades que se le adeudan.

El demandante indicó que el demandado admitió (10) de esos hechos en el descubrimiento de pruebas.

Entretanto, el 28 de enero de 2025,[6] Pozuelo presentó una *Moción de Desestimación por falta de parte indispensable*. En síntesis, alegó que faltaba incluir en el pleito a los primos del

---

[6] SUMAC TPI, entrada 32.

demandante quienes eran los codueños de las fincas adquiridas como lote 50 E y lote 50 F. Adujo que el lote 50, adquirido mediante la escritura número 51, no era objeto del pleito de epígrafe.

El 25 de febrero de 2025[7], Crespo Pol presentó su Oposición a Desestimación. Entre otras cosas, alegó que "Este pleito solo trata del cobro del Pagaré."[8] Finalmente, el 12 de marzo de 2025, notificada al siguiente día[9], el foro primario declaró *No Ha Lugar* la solicitud de desestimación de la demanda.

Luego de otros trámites, el 12 de junio de 2025[10], Pozuelo presentó la *Oposición a Solicitud de Sentencia Sumaria*. Mencionó que existían varios asuntos en controversia, entre ellos, "Si la compraventa constituida mediante la Escritura Número 51 del 19 de julio de 2023, es parte del pleito del epígrafe".[11] Más adelante, expuso que no existía controversias en que:

> El lote 50, o finca 15,307 no es parte de las alegaciones de la Demanda del epígrafe.
>
> La finca número 15,307 (lote 50) es propiedad exclusivamente de Pozuelo 50, LLC.
>
> **La finca número 15,307 (lote 50) no garantiza las sumas reclamadas en el pleito del epígrafe**.[12]

Adujo que existía controversia en cuanto a los hechos número 1, 2, 3, 4, 7 y 8. En esencia explicó que, la parte demandada adquirió la finca número 15,307 (lote 50) mediante la Escritura Número 51 del 19 de julio de 2023. Pero, constituyó hipoteca sobre el mismo mediante Escritura Número 19 del 19 de julio de 2023, inscrita a favor de la Cooperativa de Ahorro y Crédito de Aguas Buenas (Anejo 1). Indicó que en las alegaciones

---

[7] SUMAC TPI, entrada 37.
[8] Id, pág. 3, párrafo 11.
[9] SUMAC TPI, entrada 46 y 48 (Minuta de la vista argumentativa).
[10] SUMAC TPI, entrada 51.
[11] Íd, pág. 3.
[12] Id, pág. 4.

de la Demanda nada se alegaba con relación al Lote 50 o finca número 15,307.

Trabada la controversia, el 12 de junio de 2025, el foro primario dictó sentencia. Allí entendió probados los siguientes hechos:

1. Este es un caso de Cobro de Dinero de una deuda vencida, líquida y exigible cuya deuda esta evidenciada en un Pagaré ante notario. (Exhibit 1, entrada 1, entrada 30)

2. El deudor demandado, el 19 de julio de 2023, otorgó el Pagaré objeto de cobro (Exhibit 1) ante el notario Dennis Martínez Colon, affidavit 12411, emitido a la orden del acreedor demandante para pagar $249,394.00 de principal de los cuales $25,000.00 vencieron el 26 de octubre de 2023, y el principal restante de $224,394.00 venció el 19 enero 2024, a devengar intereses al 10% anual, más el pago de $24,939.40 para costas y honorarios en caso de reclamación para su cobro.

3. El demandante es el actual dueño, legal tenedor y acreedor del Pagaré. Exhibit 1.

4. El demandado admite que otorgó el Pagaré y las Esc 51 y la Esc 52 [Ex 1, Ex 2, Ex 3]. Contestación a Demanda (Entrada 12, 13 de agosto de 2024, p 2, 4; p 3, 5); Exhibit B p 9, Descubrimiento del demandante al demandado (Entrada 30); Exhibit C p 4 Contestaciones juradas y admisiones de la demandada al descubrimiento del demandante. (Entrada 30)

5. El Pagaré representa la obligación del pago del balance del precio aplazado de la compraventa de bienes de la parte demandante vendidos a la parte demandada, el 19 de julio de 2023 mediante las escrituras 51 y 52 ambas de 19 de julio de 2023 ante el notario Dennis Martínez Colón. Exhibit 2, Escritura 51 CompraVenta de 2023 (entrada 1) Exhibit 3, Escritura 52 CompraVenta de 2023 (entrada 1) párrafo 2, entrada 1; [requerimiento 2] Exhibit B p 6, Exhibit C 2 p 3. (entrada 30).

6. El demandado admite que la deuda existe. [requerimientos 10, 13, 14, 15, 16,] Exhibit B p 10, (admisión, Exhibit C 10,11,13,14,15,16, p 4 (entrada 30).

7. El demandado admite que adeuda el principal. [requerimiento 9]. Exhibit B p 4, (admisión) Exhibit C 9 p 4 (entrada 30)

8. La deuda reclamada no ha sido pagada. [requerimiento 10] Exhibit B p 8, (admisión, Exhibit C 11 p 4 (entrada 30)

9. El demandante ha notificado a la demandada sobre su falta de pago vencido. [requerimiento 11] Exhibit B p 8, (admisión, Exhibit C 12 p 3 Entrada 30)

10. La demandada falló, ha violado y continúa violando las obligaciones convenidas en el Pagaré: A. la demandada no ha hecho los pagos correspondientes según acordado; B. los pagos de la demandada están vencidos, C. expiró el término convenido para su pago. [requerimiento 7 A, 7B, 7C]; (admisión) Exhibit B p 7, Exhibit C 7 p 3 Entrada 30)

11. La demandada adeuda al demandante las cantidades reclamadas que se liquidan como sigue:
    a) Principal adeudado $249,394.00

    [……..]
    Balance adeudado a 31 enero 2024 $275,802.46.
    [……..]

| | |
|---|---|
| a) principal adeudado | $249,394.00 |
| b)10% interés anual desde el incumplimiento el 17 oct. 2023 hasta 19 enero 2024 sobre $25,000 de principal = $649.22 (17 oct – 31 oct 23) 15 días x $6.84 = $102.60 (1 nov – 31 dic 23) 2 meses x $208.333 = $416.66 (1enero -9 enero 24) 19 días x $6.84 = $129.96 | 649.22 |
| c) 10% interés anual desde el incumplimiento el 20 enero 2024 hasta 31 enero 2024 sobre $249,394.00 de principal = $819.84 (29 enero – 31 enero 24) 12 días x $68.32 = $819.84 | 819.84 |
| d) crédito convenido para costas, gastos, honorarios de abogado | 24,939.40 |
| Balance adeudado a 31 enero 2024 | $275,802.46 |

El principal adeudado devenga 10% de interés anual desde esa fecha hasta su total pago.

[……..]

12. La parte demandante expresamente ha consignado por escrito que limita su reclamación de

interes en la demanda al tipo de interés máximo que no exceda el máximo legal, y que le sería dable recobrar bajo la legislación vigente.

El foro primario expuso el derecho aplicable a la sentencia sumaria y pagaré y las obligaciones. Acto seguido, dictó sentencia para que la parte demandada pagara a la demandante las cantidades reclamadas de $275,802.46 computados al 31 de enero de 2024. Estos fueron computados como sigue: principal $249,394.00; más $1,469.06 de intereses vencidos al 10% anual computados al 31 de enero de 2024, más $24,939.40 para costas, gastos y honorarios acordados. Ordenó a su vez, el pago de intereses al 10% anual que se devenguen desde esa fecha hasta su total pago, más el pago del interés legal sobre el monto de la sentencia desde la fecha en que se dicte, incluyendo la cuantía de costas y honorarios de abogado, y hasta que sea satisfecha. Regla 44.3 *supra*.

El 27 de junio de 2025, Pozuelo solicitó reconsideración y el 2 de julio de 2025 el tribunal primario la denegó. Aun inconforme, el 1ro de agosto de 2025, Pozuelo acudió a este foro de revisión intermedio y planteó lo siguiente:

1. Erró el Tribunal de Primera Instancia al dictar Sentencia Sumaria declarando con lugar la demanda, a pesar de la existencia de controversias genuinas de hechos materiales y esenciales que debían ser dilucidadas en un juicio plenario.

2. Erró el Tribunal de Primera Instancia al no considerar que la solicitud de Sentencia Sumaria presentada por la parte Demandante no cumplía con los requisitos formales establecidos en la Regla 36.3 de Procedimiento Civil.

3. Erró el Tribunal de Primera Instancia al no desestimar la demanda por falta de una parte indispensable, ya que la controversia sobre la supuesta garantía hipotecaria afectaba derechos de terceros no incluidos en el pleito.

4. Erró el Tribunal de Primera Instancia al no reconocer que la deuda reclamada no era líquida, vencida y exigible en su totalidad, y al no

considerar la prueba de pagos parciales realizada por la Demandada.

5. Erró el Tribunal de Primera Instancia al no aplicar las doctrinas de "actos propios" y "exceptio non adimpleti contractus" en favor de la Demandada, y al no considerar la alegación de temeridad por parte del Demandante.

Crespo Pol presentó su Oposición a la Apelación. Alegó que el apelante no particularizó cada determinación de hechos ni trajo prueba que los contradiga.

## II.

## A.

La sentencia sumaria es el mecanismo procesal adecuado para resolver casos en los que no es necesaria la celebración de un juicio por no existir duda sobre los hechos esenciales, contarse con toda la evidencia necesaria y solo restar la aplicación del derecho. Consejo Tit. v. Rocca Dev. Corp., et als., 2025 TSPR 6, 215 DPR __ (2025); BPPR v. Zorrilla y otro, 2024 TSPR 62, 214 DPR __ (2024); 32 LPRA Ap. V, R. 36.3(e); Córdova Dexter v. Sucn. Ferraiuoli, 182 DPR 541, 555-556 (2011).

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, regula todo lo relacionado con la moción de sentencia sumaria, sus requisitos y su oposición. CSM v. ELA, 2025 TSPR 78, 216 DPR ___ (2025); Cruz, López v. Casa Bella y otros, 213 DPR 980, 993 (2024). Véase, además, J.A. Cuevas Segarra, Tratado de derecho procesal civil, 2da ed., Estados Unidos, Publicaciones JTS, 2011, T. III, pág. 1038.

En cuanto a la lista de hechos no controvertidos que la parte promovente debe exponer, esta tiene que desglosarlos en párrafos numerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada y otra prueba admisible en evidencia que lo apoya. SLG Zapata-Rivera

v. J.F. Montalvo, 189 DPR 414, 432 (2013); Regla 36.3(a)(4) de Procedimiento Civil, 32 LPRA Ap. V. Así pues, de la prueba que acompaña la solicitud de sentencia sumaria debe surgir preponderantemente la inexistencia de controversia sobre los hechos medulares del caso. CSM v. ELA, *supra*; Cruz, López v. Casa Bella y otros, *supra*; Aponte Valentín et al. v. Pfizer Pharm., 208 DPR 263, 277 (2021); Zambrana García v. ELA et al., 204 DPR 328, 341-342 (2020). Así pues, la parte que promueva la sentencia sumaria tiene el deber de exponer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material. CSM v. ELA, *supra*; Oriental Bank v. Caballero García, *supra*, pág. 679; Meléndez González et al. v. M. Cuebas, *supra*, pág. 110.

Los hechos materiales se refieren a aquellos que pueden alterar la forma en que se resuelve una reclamación, de acuerdo con el derecho sustantivo aplicable. Cruz, López v. Casa Bella y otros*, supra*; Zambrana García v. ELA et al., *supra*.

El oponente, por su parte, está obligado a citar específicamente los párrafos que entiende están en controversia y, para cada uno de ellos, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente. SLG Zapata-Rivera v. J.F. Montalvo, *supra*. Como norma general, "'para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente'". Ramos Pérez v. Univisión, 178 DPR 200, 215 (2010), citando a Corp. Presiding Bishop CJC of LDS v. Purcell, 117 DPR 714, 721 (1986). Esto es, la parte que se opone no puede descansar en meras alegaciones. Ramos Pérez v. Univisión, *supra*. En otras palabras,

tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. León Torres v. Rivera Lebrón, 204 DPR 20, 44 (2020).

Así pues, para que proceda este mecanismo es necesario que de los documentos no controvertidos surja de que no hay una controversia real y sustancial sobre los hechos del caso. Consejo Tit. v. Rocca Dev. Corp., et als, *supra*; Universal Ins. y otro v. ELA y otros, 211 DPR 455, 471 (2023); Ramos Pérez v. Univisión, *supra*, pág. 214.

El tribunal procederá a dictar la sentencia solicitada si "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que como cuestión de derecho el tribunal debe dictar sentencia sumaria a favor de la parte promovente". Regla 36.3(e) de Procedimiento Civil, 32 LPRA Ap. V; CSM v. ELA, *supra.*

Al atender la solicitud de sentencia sumaria y su oposición, los tribunales deberán: (1) analizar todos los documentos incluidos en las mociones y aquellos que obren en el expediente del tribunal, y (2) determinar si la parte opositora controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. Torres Pagán et al. v. Mun. de Ponce, 191 DPR 583, 598 (2014).

Sólo procede dictar sentencia sumaria cuando surge de manera clara que, ante los hechos materiales no controvertidos, la parte promovida no puede prevalecer ante el derecho aplicable y el tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. Serrano Picón v. Multinational

Life Ins., 212 DPR 981, 992 (2023); Meléndez González et al. v. M. Cuebas, 193 DPR 100, 109-110 (2015).

La sentencia sumaria sólo debe dictarse en casos claros, y cualquier duda debe resolverse en contra de la parte que solicita la sentencia. Zambrana García v. ELA, *supra*, pág. 341 (2020); Rivera et al. v. Superior Pkg., Inc. et al., 132 DPR 115, 133 (1992).

Por otro lado, el Tribunal Supremo ha manifestado que no es aconsejable dictar sentencia sumaria en casos donde existe controversia sobre asuntos de credibilidad o que envuelvan aspectos subjetivos, como la intención, los propósitos mentales o la negligencia. Cruz, López v. Casa Bella y otros, *supra*; Aponte Valentín et al. v. Pfizer Pharm., *supra*, pág. 278. (Énfasis añadido). De igual modo, "el tribunal no deberá emitir una sentencia sumaria cuando: (1) existan hechos materiales controvertidos; (2) haya alegaciones afirmativas en la demanda que han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material, o (4) como cuestión de derecho, ésta no proceda". CSM v. ELA, *supra*; citando a Serrano Picón v. Multinational Life Ins., supra.

En cuanto al alcance de la revisión judicial, los tribunales apelativos nos encontramos en la misma posición que el foro primario al evaluar la procedencia de una sentencia sumaria. Sin embargo, nuestra función se limita a: (1) considerar los documentos que se presentaron ante el foro de primera instancia; (2) determinar si existe alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta. CSM v. ELA, *supra*; Birriel Colón v. Econo y otro, 213 DPR 80, 91 (2023).

**B.**

En Puerto Rico, la Ley Núm. 208-1995, según enmendada, conocida como la Ley de Transacciones Comerciales (Ley de Transacciones Comerciales) reglamenta, entre otros, los instrumentos negociables. El término instrumento negociable se define como "una promesa o una orden incondicional de pago de una cantidad específica de dinero, […], si el mismo:

> (1) es pagadero al portador o a la orden al momento de su emisión o cuando primero adviene a la posesión de un tenedor;
> (2) es pagadero a la presentación o en una fecha específica; y
> (3) no especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero, pero la promesa u orden puede contener (i) un compromiso o poder para dar, mantener o proteger **colateral para garantizar el pago**, (ii) una autorización o poder al tenedor para admitir sentencia o liquidar la colateral o disponer de ella de otra forma, o (iii) una renuncia al beneficio de cualquier ley que exista concediéndole una ventaja o protección a un deudor.  Sección 2-104 (a) de la Ley de Transacciones Comerciales, 19 LPRA sec. 504.

Asimismo, la Ley de Transacciones Comerciales, define el "pagaré" como, un instrumento que evidencia una promesa de pagar una obligación pecuniaria […]. Sección 9-102 (65), 19 LPRA sec. 2212.

**C.**

En cuanto a la hipoteca, el Artículo 1011 del Código Civil de 2020 la define como, "un derecho real de garantía que puede constituirse sobre bienes inmuebles que continúan en poder del deudor o de un tercero, para asegurar toda clase de obligaciones." 31 LPRA sec. 8731.  Para que la hipoteca quede válidamente constituida es indispensable que el instrumento en que se constituya se inscriba en el Registro de la Propiedad, excepto cuando la ley la reconoce como tácita. Artículo 1014 del Código Civil de 2020, 31 LPRA sec. 8734.

Ahora bien, en ocasiones donde por determinada razón la escritura de hipoteca no logra su inscripción en el Registro de la Propiedad, esta "constituye prueba como documento privado y, por ende, vale como negocio jurídico entre los otorgantes si concurren los requisitos contractuales de consentimiento, objeto y causa". Crespo Rodríguez v. González González, 208 DPR 557, 574,575 (2022); DLJ Mortgage v. SLG Santiago-Ortiz, 202 DPR 950, 963 (2018).

Por otro lado, el Tribunal Supremo ha expresado que únicamente se pueden reclamar por vía judicial las deudas vencidas, líquidas y exigibles. RMCA v. Mayol Bianchi, 208 DPR 100, 108 (2021).  Al alegarse que la cuenta es 'líquida y exigible' se están exponiendo hechos, a saber: que el residuo de la cuantía ha sido aceptado como correcto por el deudor y que está vencido. RMCA v. Mayol Bianchi, *supra*, pág. 109.

En cuanto a la interpretación de los contratos, el Artículo 354 del Código Civil de 2020, dispone que, "[s]i los términos de un negocio jurídico bilateral son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras."  Añade que "[s]i las palabras parecen contrarias a la intención evidente de las partes, prevalecerá la intención sobre lo expresado." Íd.[13]  A su vez, el Tribunal Supremo ha reiterado que no se pueden encontrar en el contrato, "cosas distintas y casos diferentes de aquéllos sobre que los interesados se propusieron contratar". Asoc. Res. Los Versalles v. Los Versalles, 194 DPR 258, 268 (2015)[14].  Es pues, función del juzgador armonizar el conjunto de los términos del contrato con la verdadera intención de las

---

[13] 31 LPRA 6342.
[14] Aludiendo al Artículo 1235 del ya derogado Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3473.

partes. <u>Asoc. Res. Los Versalles v. Los Versalles</u>, *supra*; <u>Carrillo Norat v. Camejo</u>, 107 DPR 132, 138 (1978).  La interpretación contractual tiene que ser cónsona con el principio de la buena fe y no puede llevar a resultados incorrectos, absurdos e injustos.  <u>S.L.G. Irizarry v. S.L.G. García</u>, 155 DPR 713, 726 (2001).

## III.

En su recurso, el apelante Pozuelo alega que planteó múltiples controversias de hechos materiales y esenciales en su *Oposición a la Solicitud de Sentencia Sumaria*.  En síntesis, sostuvo que la finca adquirida mediante la Escritura Número 51, no era objeto del pleito y no garantizaba ninguna deuda a favor del demandante.  Indicó que hubo una constitución de hipoteca sobre los lotes 50E y 50F de Guayama, adquiridos mediante la escritura 52.  Cuestionó, también, la interpretación del párrafo CUARTO de la Escritura 52 y la "venta en conjunto".  Adujo que realizó pagos parciales a la deuda, lo cual impide la determinación sumaria de la totalidad de la deuda.  Evaluamos.

En el inciso 5, el foro primario decretó como hecho no controvertido que,

> 5. El Pagaré representa la obligación del pago del balance del precio aplazado de la compraventa de bienes de la parte demandante vendidos a la parte demandada, el 19 de julio de 2023 mediante las escrituras **51** y 52 ambas de 19 de julio de 2023 ante el notario Dennis Martínez Colón. [….] (Énfasis nuestro).

Sin embargo, tal como el apelante lo plantea, esta aseveración está en controversia, toda vez que la referencia a la escritura número 51 no se sustenta con los documentos del expediente.  Explicamos.

El demandante presentó una reclamación de cobro de dinero basado en un pagaré suscrito por las partes por la suma de

$249,394.00 de principal. Adujo que el pagaré representaba la obligación del pago del balance del precio aplazado de la compraventa de bienes de la parte demandante vendidos a la parte demandada, mediante las escrituras **51** y 52 otorgadas el 19 de julio de 2023, ante el notario Dennis Martínez Colón. Sin embargo, al describir los bienes vendidos a la demandada, el demandante únicamente aludió a las fincas "50 E" y "50 F" de la comunidad rural Pozuelo, barrio Jobos, en Guayama, adquiridas mediante la escritura número 52.

Surge de la escritura 52 que la parcela 50E fue adquirida por $25,000.00, de los cuales el comprador Pozuelo, pagó $1,500.00, quedando un balance de $23,500.00. La parcela 50F, se adquirió por $239,394.00, de la cual Pozuelo realizó un adelanto de $13,500.00, subsistiendo un balance de $225,894.00. La escritura indica un balance pendiente de ambas fincas por $249,394.00. Acto seguido, en la misma cláusula SEGUNDA de la escritura 52, las partes pactaron que, "[m]ediante escritura señalada se ha garantizado el balance adeudado mediante el otorgamiento de una hipoteca en garantía de pagaré a favor del VENDEDOR".

El expediente también contiene un documento intitulado *Pagaré Hipotecario* por la cantidad de $249,394.00 con vencimiento el 19 de enero de 2024. El pagaré establece que la obligación está garantizada por la hipoteca constituida según escritura número 53 otorgada el 19 de julio de 2023 ante el notario Dennis D. Martínez Colón. Indica el pagaré que, "en cuyo documento se establecen las condiciones de la referida hipoteca que garantiza esta obligación […]."

Revisamos la escritura número 53 sobre *Hipoteca en Garantía de Pagaré*[15] y esta menciona únicamente a los solares 50 E y 50 F adquiridos mediante la escritura número 52. También alude a los acuerdos suscritos en la escritura número 52. La escritura número 53 **no** señala la parcela número 50 que se adquirió mediante la escritura número 51 otorgada el mismo 19 de julio de 2023 ante el Notario Dennis D. Martínez Colón.

En suma, en esta acción por el cobro de un pagaré, las únicas fincas atadas a ese pagaré son las propiedades 50 E y 50 F, adquiridas mediante la escritura número 52. Según reseñamos, la escritura 52 claramente dispone que la deuda pendiente a pagar es de $249,394.00, que quedaría garantizada mediante el otorgamiento de una hipoteca en garantía de pagaré. Acorde a ello, se otorgó un pagaré por esa misma suma de $249,394.00, según garantizado por la escritura número 53. En la escritura número 53, solamente se describen las parcelas 50 E y la 50 F como las propiedades garantizadas por el pagaré.

De manera que, la determinación de hechos número cinco (5), que establece que el *Pagaré* representaba la obligación de los bienes vendidos a la parte demandada mediante **la escritura 51**, está en controversia. El demandado controvirtió este hecho desde la primera alegación responsiva y en la oposición a la sentencia sumaria, cuando indicó que la finca número 50, descrita en la escritura Número 51, **no garantizaba deuda alguna a favor del demandante**. Por tanto, dejamos sin efecto la determinación de hechos número cinco (5), en la parte que hace referencia a la escritura número 51.

---

[15] El demandante no incluyó esta escritura como apéndice de la moción de sentencia sumaria. No obstante, en el expediente del tribunal ya existía una copia al ser incluida como anejo de la *Moción en Cumplimiento de Orden Según la Vista de 15 de enero de 2025, entrada 29 de SUMAC TPI.*

Para aclarar esta controversia, remitimos el asunto al foro primario para que dilucide si la parcela número 50, adquirida con la escritura número 51 es parte del pagaré objeto de cobro. De incluirse esa escritura 51, y el bien allí descrito, el foro primario debe evaluar si es necesario acumular como parte indispensable al acreedor hipotecario, tal cual lo planteó el apelante en el quinto señalamiento de error.

Con lo anterior, disponemos de los señalamientos de error primero, segundo, tercero y quinto.

Por último, en el cuarto señalamiento de error, Pozuelo alegó que no debía la suma total reclamada sino una cantidad menor. Afirmó que realizó pagos parciales, lo que creó una controversia de un hecho material que el foro primario no podía resolver sumariamente. No nos persuade.

Para derrotar una moción de sentencia sumaria, la parte opositora debe presentar evidencia sustancial que apoye los hechos materiales que alega que están en disputa. Esta acción de cobro se basó en un pagaré que suscribió Pozuelo a favor de Crespo Pol, por la suma de $249,394.00. A esta cantidad, ya se le había descontado ciertos pagos que realizó Pozuelo. Así que, el pagaré contenía sus propias cláusulas en cuanto a la cantidad adeudada, el término para pagarla y los intereses.

En la moción de sentencia sumaria la parte demandante alegó que el principal adeudado era de $249,394.00, explicó los intereses a pagar, lo que arribó a un balance adeudado a 31 de enero de 2024 a $275,802.46. Pozuelo por su parte, admitió el principal adeudado y que la deuda reclamada no fue pagada.[16] Aun cuando Pozuelo alegó que existía controversia sobre la suma

---

[16] SUMAC TPI, entrada 30, anejo Contestación a Primer Pliego de Interrogatorios.

adeudada, este no suplió, en la oposición a la sentencia sumaria, evidencia de los pagos parciales que presuntamente realizó. Era su obligación así hacerlo, pues no podía descansar en meras aseveraciones para controvertir la deuda reclamada. El error no fue cometido.

**IV.**

Por las razones aquí expresadas, se confirma el cobro de dinero. Se modifica la Sentencia aquí apelada, porque existe controversia sobre la parcela número 50, adquirida en la escritura número 51.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones